UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Air Line Pilots Association, International,

    Plaintiff

    v.                                           Case No. 1:06cv823

DHL Holdings (USA), Inc.,              Judge Michael R. Barrett

    Defendant.

## ORDER

This matter is before the Court upon Plaintiff Air Line Pilots Association, International's ("ALPA") Motion to Remand (Doc. 3) and Defendant DHL Holdings (USA), Inc.'s ("DHL") Motion to Change Venue (Doc. 9). Also pending before the Court is DHL's Motion for Hearing on Defendants Motion to Transfer Venue (Doc. 15).

**I.    BACKGROUND**

Plaintiff Air Line Pilots Association, International ("ALPA") brings this action pursuant to Ohio Revised Code § 2711.03 to enforce a written agreement to arbitrate. (Doc. 2) In 1990, ALPA was certified pursuant to the Railway Labor Act as the collective bargaining representative of pilots employed by DHL Airways, Inc. ("Airways"). (Doc. 10, Ex. 1) At that time, Airways was a wholly-owned subsidiary of a holding company then known as DHL Worldwide Express, Inc., which is now known as DHL Holdings (USA), Inc. ("DHL"), the Defendant in this case. (Id.) DHL provides overnight package delivery services. (Id.)

In December 1998, Airways entered into a collective-bargaining agreement ("CBA") with ALPA. (Id.) At that time, Airways performed both the ground and air operations of

DHL's business. (Id.) The CBA contains certain provisions which ensure that, with certain exceptions, all air carriage of DHL freight within the U.S. and at least fifty percent of DHL frieght shipped between the U.S. and any foreign point would be flown by pilots employed by Airways and covered by the CBA. (Doc. 2) To permit ALPA to police these guarantees, the CBA provides that ALPA will be provided with information about DHL's use of other air carriers.

Contemporaneously, DHL executed a side Letter of Agreement with ALPA. (Doc. 2, Ex. A) The Letter of Agreement states that DHL agrees to "adopt and be bound by all terms and conditions provided in Section 1" of the CBA between Airways and ALPA. (Id.) DHL and ALPA also agreed that "any disputes which arise out of grievances or out of interpretation or application of this Letter or Section 1 of the [CBA] will be subject to determination in accordance with Section 1.F of the [CBA]," which provides for binding arbitration of all disputes arising under Section 1. (Id.)

In March 2001, DHL's business in the U.S. was restructured because a foreign entity acquired majority ownership of the DHL network and, under U.S. law, a minimum of 75 percent of the voting power and 55 percent of the equity in a U.S. airline must be in the hands of U.S. citizens. (Doc. 10, Ex. 1) DHL transferred the ground operations of the former Airways to a wholly-owned subsidiary known as DHL Worldwide Express, Inc. ("Express"), leaving Airways with only the assets related to its air operations. (Id.) DHL, Express and Airways entered into contractual arrangements that enabled them jointly to continue to operate an air and ground transportation network in the U.S. (Id.)

As a result of the March 2001 restructuring, the approximately 9000 employees of Airways who had performed its ground operations (such as pickup, sorting, loading, and

delivery) became employees of DHL Express. (Id.) The approximately 1,000 employees of Airways who had performed air operations remained employees of Airways performing roughly the same work they had previously performed. (Id.)

On July 14, 2003, DHL sold its remaining shares of Airways. (Id.) The new owners of Airways changed the name of the company to ASTAR. (Id.)

The present case arose when ASTAR and DHL did not provide information to which ALPA maintains it is entitled to under the CBA and the Letter of Agreement. ALPA filed a grievance against ASTAR, taking the matter to arbitration before the System Board of Adjustment. ASTAR maintained that it did not have the information, but DHL did. The System Board ruled that ALPA was entitled to the information, and DHL must either provide the information, or enter an appearance in the arbitration. The System Board retained jurisdiction pending DHL's response. When DHL failed to respond, ALPA filed this lawsuit.

ALPA originally filed this action in the Hamilton County Court of Common Pleas. DHL removed, stating that ALPA's state law claim was preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq*. ALPA now argues that this matter should be remanded because the Letter of Agreement signed by DHL is a common-law contract governed by state law, and DHL is not an air carrier subject to the RLA. ALPA explains that the suit is not an action to enforce an award of the System Board, but seeks merely to compel DHL to submit to arbitration before the System Board in accordance with the Letter of Agreement.

**II.     ANALYSIS**

A defendant may remove any "civil action of which the district courts have original

jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States." 28 U.S.C. § 1441(b). The party removing the case from state court bears the burden of proving that federal jurisdiction exists. *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544, 550 (6th Cir. 2006).

The well-pleaded complaint rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 391 (1987). There are two narrow exceptions to the well-pleaded complaint rule. A plaintiff cannot avoid federal jurisdiction when (1) federal law completely preempts the state-law claims; or (2) the state-law claims raise substantial questions of federal law. *Palkow v. CSX Transportation, Inc.*, 431 F.3d 543, 552 (6th Cir. 2006). DHL argues that ALPA's claims are preempted by the RLA.

There are several forms of preemption of state law under the Supremacy Clause. *In re Air Crash at Lexington, Kentucky, August 27, 2007*, 2007 WL 1119940, *4 (E.D.Ky. April 13, 2007). Congress may expressly state its intention that a federal statute will preempt state law, or preemption may be implied. *Id.* Implied preemption may take one of two forms, "ordinary" or "complete." Complete preemption that supports removal and ordinary preemption are "two distinct concepts." *Id.*, citing *Warner v. Ford Motor Co.*, 46 F.3d 531, 535 (6th Cir. 1995) (en banc).[1] "Ordinary preemption applies to statutory sections that arguably supersede conflicting state laws without creating the right of

---

[1] Thus far, the Supreme Court has recognized complete preemption under only three statutes: § 301 of the Labor Management Relations Act, 1947 (LMRA), 29 U.S.C. § 185, § 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., and § 30 of the National Bank Act, 12 U.S.C. §§ 85 & 86. *Roddy v. Grand Trunk Western R.R. Inc.*, 395 F.3d 318, 323 (6th Cir. 2005).

removal." *Roddy v. Grand Trunk Western Railroad, Inc.*, 395 F.3d 318, 326 (6th Cir. 2005). "The fact that a defendant might ultimately prove that a plaintiff's claims are preempted under [federal law] does not establish that they are removable to federal court." *Caterpillar*, 482 U.S. at 398.

The Sixth Circuit has held that the RLA "does not have the extraordinary preemptive force necessary to create federal removal jurisdiction." *Roddy*, 395 F.3d at 326. Therefore, removal on this basis was not proper.[2]

While not stated as a basis for removal in its Notice, DHL argues that removal was proper under Section 301 of the Labor Management Relations Act. As the Sixth Circuit has recognized, it is the "unusually powerful pre-emptive force of § 301" that places it in the small category of statutes that not only preempt state law but also authorize removal of actions that sought relief only under state law. *Alongi v. Ford Motor Co.*, 386 F.3d 716, 723-24 (6th Cir. 2004). However, there appears to be no dispute that ALPA is not a "labor organization" under Section 301, and therefore the agreement between ALPA and Airways is not governed by the statute. Therefore, removal would not be proper on this basis.

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1. Plaintiff's Motion to Remand (Doc. 3) is **GRANTED**;

2. Defendant's Motion to Change Venue (Doc. 9) is **DENIED as MOOT**;

---

[2] It must be noted that there is no dispute that this Court would have jurisdiction of a suit to enforce an award of an airline System Board of Adjustment. *See International Ass'n of Machinists v. Central Airlines, Inc.*, 372 U.S. 682 (1963). However, ALPA has not brought such a claim, and because there is no basis for an exception to the well-pleaded complaint rule, there are no grounds for removal.

3. Defendant's Motion for Hearing on Defendants Motion to Transfer Venue (Doc. 15) is **DENIED as MOOT**; and

4. This matter shall be **REMANDED IN ITS ENTIRETY** to the Hamilton County Court of Common Pleas, from which it was removed.

**IT IS SO ORDERED.**

                          */s/ Michael R. Barrett*
                          Michael R. Barrett, Judge
                          United States District Court